JOHN ABBOTT *vs.* FREDERICK A. GASKINS.

Suffolk.   January 15, 1902. — May 23, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Probate Court.   Jurisdiction.   Compromise.*

The Probate Court has no jurisdiction to confirm agreements of compromise under
Pub. Sts. c. 142, § 14, and a decree of that court purporting to confirm such an
agreement is void.

In a suit in equity to enforce a contract to purchase certain land from the plaintiff,
where the only defence was that the plaintiff could not give a good title, it ap-
peared, that the plaintiff claimed under a deed from the executors under a cer-
tain will and that the will had been allowed by the Probate Court in pursuance
of an agreement of compromise under Pub. Sts. c. 142, § 14, which had been
confirmed by another decree of the same Probate Court immediately preceding.
The decree allowing the will provided that the will was to be administered in ac-
cordance with the agreement of compromise confirmed by the preceding decree.
The will gave the executors power to sell real estate.  *Held,* that the plaintiff
had no title because the Probate Court had no jurisdiction to confirm an agree-
ment of compromise under Pub. Sts. c. 142, § 14; and the bill was dismissed.

BILL IN EQUITY, filed in the Superior Court for the County of
Suffolk August 17, 1901, for the specific performance of an
agreement in writing to purchase from the plaintiff a certain lot
of land on Dover Street in Worcester.

The defendant in his answer admitted that he made the agree-
ment and signed the memorandum for the purchase of the land
in Worcester, as set forth in the bill, and that the plaintiff ten-
dered to him a quitclaim deed purporting to convey the land,
but denied that the plaintiff tendered to him a good and suf-
ficient deed conveying a good and clear title to the land, as
required by the agreement, and alleged that the plaintiff was
unable so to do.

In the Superior Court the case came on to be heard before
*Fessenden,* J., who, at the request of the parties, reserved it
upon the bill, answer and agreed statement of facts for the con-
sideration of this court, such decree or order to be made as jus-
tice and equity might require.

By the agreed facts it appeared, that the land in question
belonged to William T. Merrifield of Worcester at the time of
his death.

Merrifield died leaving a will, which was offered for probate; and while the matter of its allowance was pending, a petition was filed in the Probate Court, stating, that a controversy had arisen between the devisees and legatees under the will and the persons entitled to the estate under the statutes regulating the descent and distribution of intestate estates, and praying that the court authorize and confirm a compromise which had been arranged by the parties in interest. All parties interested assented to the compromise, some acting through attorneys and some through guardians. The Probate Court thereupon entered a decree approving the agreement of compromise and ordering that the executors be authorized to administer the estate of Merrifield under the will as modified, restricted and controlled by the agreement of compromise as set forth in the petition and confirmed by that court, and that all the real estate and personal property referred to in the agreement of compromise should respectively vest in and be taken by the devisees and legatees and parties to the agreement of compromise exactly in accordance with the terms and provisions of that agreement.

Upon the same day the Probate Court made a second decree, upon the petition of William F. Merrifield, Henry K. Merrifield and Harriette M. Forbes for the allowance of the will of Merrifield, as follows:

" It is decreed that said instrument be approved and allowed as the last will and testament of said deceased, but to be executed according to the terms of a compromise authorized and confirmed by this Court by a decree entered this day upon a petition in equity of Guy Merrifield French *v.* William F. Merrifield *et al.*, and letters testamentary be issued to said petitioners, they first giving bonds, without sureties, for the due performance of said trust."

The will of Merrifield contained the following:

" And I hereby direct authorized and empower the executors herein named to sell any and all my real estate when they shall consider it for the best interest of said estate.

" I hereby nominate my said sons William F. Merrifield and Henry K. Merrifield and my said daughter Hattie Forbes and William T. Forbes joint executors of this my last will and testament and I request that no surity or sureties be required

of them on their bond for the execution of the trusts herein created."

William T. Forbes declined to serve as executor. William T. Merrifield, Henry K. Merrifield and Harriette M. Forbes qualified as executors, gave bonds approved by the court, and proceeded to administer the estate in accordance with the decrees.

William T. Merrifield, Henry K. Merrifield and Harriette M. Forbes in the exercise of their powers under the decrees, conveyed to one Liscomb the land described in the agreement of purchase set out in the plaintiff's bill, and the land by mesne conveyances came to the plaintiff, holder of the record title.

The defendant did not raise any objection as to the form of the deed, and asked the judgment of this court only upon the question whether Liscomb received a free and clear title to the real estate, submitting, that the Probate Court had no jurisdiction in the matter of confirming the compromise of the will, that, as the Probate Court did not have jurisdiction in the premises, its decree was void *ab initio,* and that as the decree was void the consent of parties did not give it force. No other question was argued on either side, and the point was not taken, that if the first decree was void the second decree might be valid so far as it allowed the will.*

*S. Lincoln,* for the plaintiff.

*J. Lowell,* for the defendant.

HAMMOND, J. The sole question presented by this case is whether the power given to the Supreme Judicial Court by Pub. Sts. c. 142, § 14, is also given to probate courts by St. 1891, c. 415, § 1.

The first statute is as follows: " The Supreme Judicial Court, sitting in equity, may authorize the persons named as executors in an instrument purporting to be the last will of a person deceased to adjust by arbitration or compromise any controversy that may arise between the persons claiming as devisees or legatees under such will and the persons entitled to the estate of the deceased under the statutes regulating the descent and distribution of intestate estates ; to which arbitration or compromise the persons named as executors, those claiming as devi-

---

* See *Bartlett* v. *Slater,* 182 Mass.

sees or legatees, and those claiming the estate as intestate, shall be parties."

The second is as follows: "The probate courts shall have jurisdiction in equity, concurrently with any other court having jurisdiction of proceedings in equity, of all cases and matters relating to the administration of estates of deceased persons or to wills or trusts created by will, and such jurisdiction may be exercised upon petition, according to the usual course of proceedings in the probate courts."

It becomes necessary to consider briefly the state of equity jurisdiction in this Commonwealth at the time of the passage of the second statute. Limited equity jurisdiction had been granted to the Supreme Judicial Court from time to time, but finally, by virtue of St. 1877, c. 178, § 1, the court became possessed of "jurisdiction in equity of all cases and matters of equity cognizable under the general principles of equity jurisprudence," and as to such matters it became "a court of general equity jurisdiction." Speaking in a general way, it may be said that the various statutes under which this jurisdiction was granted were substantially re-enacted in Pub. Sts. c. 151, §§ 1–4.

This court "sitting in equity" also had jurisdiction in certain other cases outside the general principles of equity jurisprudence, some of which are enumerated by Morton, C. J., in delivering the opinion in *Baldwin* v. *Wilbraham*, 140 Mass. 459.

The Probate Court also had jurisdiction in equity to hear and determine all matters relating to trusts created by will and various other matters not material to this inquiry. See *Swasey* v. *Jaques*, 144 Mass. 135, and the statutes and cases therein cited.

In this situation, St. 1883, c. 223, was passed. It conferred upon the Superior Court "original and concurrent jurisdiction with the supreme judicial court in all matters in which relief or discovery in equity is sought, with all the powers and authorities incident to such jurisdiction," with authority to "issue all general and special writs and processes required in proceedings in equity to courts of inferior jurisdiction, corporations and persons when necessary to secure justice and equity." § 1. In *Baldwin* v. *Wilbraham, ubi supra*, Morton, C. J. speaks of this statute as follows: "The language of the statute is broad, and, without doubt, it was intended to confer upon the Superior Court

concurrent jurisdiction in equity in all suits between individuals involving private rights, of which the Supreme Judicial Court has jurisdiction by virtue of the general principles of equity jurisprudence." In that case, however, it was held that the Superior Court did not have jurisdiction in equity over a petition brought under Pub. Sts. c. 27, § 129, by ten taxable inhabitants to restrain a town from an alleged illegal expenditure of money, that not being a matter within the general principles of equity jurisprudence; and it was said that the intention of the Legislature was "to give the Superior Court concurrent jurisdiction in all matters within the scope of the general equity jurisprudence, but to retain within the exclusive jurisdiction of the Supreme Judicial Court other special bills, writs, or petitions allowed by our statutes, in which relief in equity is prayed for." This decision was made and published in the early part of the year 1886, five years before St. 1891, c. 415, was passed. See also *Langmaid* v. *Reed*, 159 Mass. 409; *Steele* v. *Municipal Signal Co.* 160 Mass. 36; *Barker* v. *Mackay*, 168 Mass. 76, where the same rule is applied.

In the light of the previous statutes, including St. 1883, c. 223, and of the interpretation given as above stated to the one last named, St. 1891, c. 415, was passed. It confers upon the probate courts " jurisdiction in equity, concurrently with any other court having jurisdiction of proceedings in equity, of all cases and matters relating to the administration of estates of deceased persons," etc., "and such jurisdiction may be exercised upon petition, according to the usual course of proceedings in the probate courts." We can see no satisfactory ground upon which it can be said that the kind of " jurisdiction in equity " conferred upon the probate courts is any broader than that conferred upon the Superior Court in St. 1883, c. 223 ; and when we consider the state of the statutory law concerning jurisdiction in equity and the interpretation which had been given to St. 1883, c. 223, in the first case above cited, we are driven to the conclusion that the jurisdiction in equity conferred upon probate courts by St. 1891, c. 415, is simply jurisdiction within the scope of general equity jurisprudence as to the cases and matters therein named. If the Legislature intended to grant anything more, it is to be supposed that it would have expressed the intention clearly, and

would not have left it to be inferred from the general terms used.

It is urged by the plaintiff that the power conferred by Pub. Sts. c. 142, § 14, is one which is included in the general equity powers exercised by English courts of chancery, and is cognizable under the general principles of equity jurisprudence ; and he cites several cases. But all the cases presuppose an actual valid agreement voluntarily made, and the purpose of each suit is to enforce the agreement. A very good illustration of this is found in our own books in *Leach* v. *Fobes*, 11 Gray, 506. There the female plaintiff, the sole heir at law of the testator, and the defendant, who was his widow and the stepmother of the plaintiff, had a controversy as to whether the will should be admitted to probate. They finally made an agreement under seal by which the plaintiff received more than she would have received under the will. The defendant afterwards repudiated the agreement and procured the will to be admitted to probate. The action was to compel a specific performance of the agreement, and there was a decree for the plaintiff. There can be no doubt that equity will reach such a case. An agreement is none the less such by reason of the fact that the withdrawal of an objection to the allowance of a will or a change in the rights created by a will is one of its features.

But the proceeding under Pub. Sts. c. 142, § 14, is entirely different. It is not the purpose of this statute to enforce an agreement. There is no contest over the agreement when it reaches the court. The sole purpose is to allow it to become operative. If all the parties are of age, the assistance of the court is not needed. *Leach* v. *Fobes*, 11 Gray, 506. *Gordon* v. *Gordon*, 3 Swanst. 476. See also cases cited in Beach, Modern Eq. Jur. § 1003, and cases therein cited.

But there are many cases where, by reason of minority or otherwise, the parties are unable to execute an agreement that shall be binding upon them, and, in the language of § 15 of the same chapter, there are frequently future contingent interests affecting the parties in being and parties not in being, and there is no way in which these interests can be affected by any agreement. In such a case, the statute acts to relieve the situation, not, however, to enforce an agreement, but to breathe life into it. If

subsequently there be occasion to enforce it against one who refuses to stand by it, then the matter is one of general equity jurisdiction. But the action of the court in the first instance "is anomalous and rests upon the statutes." *Elder* v. *Adams,* 180 Mass. 303.

The result is that the decree of the Probate Court is invalid for want of jurisdiction. This construction of the St. 1891, c. 415, seems also to have been the one adopted by the Legislature in the new codification of the statutes. See R. L. c. 148, § 15, and c. 162, § 5.

*Bill dismissed.*