SOPHRONIA A. DAY *vs.* GUY C. RICHARDS, administrator.

Essex. November 9, 1907. — January 1, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Gift. Donatio Causa Mortis. Savings Bank.*

If a man, being very sick, on the day before his death, intending to give a deposit standing in his name in a savings bank to a certain woman, tells the woman's daughter of this intention and says to the daughter, referring to the savings bank book, "Go out in the shop and you will find it in the north corner," and hands her four keys on a ring, one of which unlocks the shop, and the daughter goes to the shop but fails to find the book and so reports to the sick man, and on his repeating the same direction goes again with her brother to the shop and makes another unsuccessful search, and if, upon her telling the sick man that she cannot find the book, he says, "You will, you will," and after his death the book is found in the shop locked in a trunk which is opened by one of the four keys which the sick man handed to the daughter, these facts are not evidence of an actual delivery of the savings bank book to the daughter for the mother such as is necessary to perfect a gift either *inter vivos* or as a *donatio causa mortis.*

Whether a bank book locked in a trunk in a building used for a shop can be delivered as a gift by a delivery of four keys on a ring, of which one is the key of the shop and another is the key of the trunk, here was not passed upon, because, although such keys were handed to a person, the evidence did not show that they were handed to her as a delivery of the book, they being given to her merely for the purpose of getting out the book and bringing it to the owner.

CONTRACT against the administrator of the estate of John M. Gilmore, late of Beverly, to recover the amount standing in the name of the defendant's intestate in the Salem Savings Bank after deducting the amount of debts of the deceased paid by the defendant as administrator, funeral expenses and charges of administration. Writ dated March 30, 1905.

In the Superior Court *Aiken,* C. J., upon the facts stated in the opinion, ruled that the plaintiff was not entitled to recover,

found for the defendant, and reported the case for determination by this court.   If upon the evidence the ruling was wrong, judgment was to be entered for the plaintiff for the balance of the money in the defendant's possession according to the terms of a written agreement; if the ruling was right, judgment was to be entered for the defendant.

*D. W. Quill,* for the plaintiff.

*G. C. Richards, pro se.*

KNOWLTON, C. J.    This is an action of contract to recover a sum of money deposited in a savings bank by the defendant's intestate and standing in his name in the savings bank book at the time of his death.   The only question in the case is whether the book passed to the plaintiff from the defendant's intestate as a *donatio causa mortis.*   Upon the evidence and the facts found by the Chief Justice of the Superior Court he ruled that it did not.   He found " that the intestate intended to make a gift of the book to Mrs. Day."   But his ruling upon the other findings and on the evidence rests, undoubtedly, on the ground that there was no proof of a delivery.

That an actual delivery of the property, such as completely to transfer the dominion and control of it in the lifetime of the donor, must be proved, to establish the validity of such a gift, has often been declared by this court.   *Coleman* v. *Parker,* 114 Mass. 30.   *McGrath* v. *Reynolds,* 116 Mass. 566, 568. *Pierce* v. *Boston Five Cents Savings Bank,* 129 Mass. 425.   *Debinson* v. *Emmons,* 158 Mass. 592.   *Scollard* v. *Brooks,* 170 Mass. 445.   *Duryea* v. *Harvey,* 183 Mass. 429.

In this case the defendant's intestate had no conversation with the plaintiff herself in regard to making her a gift, and the property was not at any time in his presence after his determination to give it.   Being very sick, on the day before his death he expressed his purpose to the plaintiff's daughter, told her in general language where the property could be found, handed her four keys on a ring, one of which unlocked the building in which it was, and said to her, " Go out in the shop and you will find it in the north corner."   He made no statement more definite than this as to its location.   The plaintiff's daughter went to the shop and searched for it unsuccessfully, and reported the fact to him ; he again made the same general statement as to where it was,

and she went a second time with her brother and made another search without success.    Upon telling him again that she could not find it, he said : " You will, you will."    After his death her brother found it in the shop locked in a trunk, about which the intestate had said nothing.    One of the four keys that the intestate passed to the plaintiff's daughter fitted the lock of the trunk.

The evidence does not tend to show that the keys were handed to the plaintiff's daughter as a delivery of the book, if such an article locked in a trunk in an unoccupied building could have been delivered in that way, which we do not intimate.    The keys were entrusted to the plaintiff's daughter to enable her to go and get the book.    The owner did not even refer to the book, in terms, as a book, but referred to it only as money.    If the plaintiff's daughter had found it and brought it to him, he might have made a manual delivery of it to the plaintiff, or to her daughter for her ; but the evidence falls short of showing an actual delivery of the property, such as is necessary to perfect a gift, either *inter vivos* or as a *donatio causa mortis.*

*Judgment for the defendant.*