HJALMAR A. NELSON, administrator, *vs.* CARL G. PETERSON.

Suffolk. January 20, 1909. — May 24, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Equity Pleading and Practice*, Reservation by report. *Gift. Donatio Causa Mortis.*

Where in a suit in equity the judge who hears the case, after finding certain facts, dismisses the bill, and then reports the case for determination by this court upon the terms that such decree is to be entered "as justice and equity may require," it is the duty of this court to examine the facts and come to their own conclusion, giving due weight to the conclusion of the judge who heard the case.

In a suit in equity by an administrator to compel the delivery to him of property which had belonged to his intestate and which was claimed by the defendant, as the president and a trustee of a voluntary association of which the intestate was a member, by virtue of an alleged *donatio causa mortis* to the association, it appeared that the property of the intestate consisted of certain wearing apparel and $500 in money. Some of the wearing apparel was in a trunk and some of it was hanging in a closet of his room, which he occupied as a boarder. One morning he was very sick and knew it. Before leaving for the hospital, in which he died, he handed the key of the trunk to his landlady and said, "Here is the key of my trunk. Don't give it to anybody but the president, Mr. P., [the defendant] or the board of trustees. Give it to them." He also told her in substance that there was $500 in a pocket book in his trunk, that there was a dress suit that he intended should be used as his burial clothes, that there was some clean underwear which he wished the landlady to "pick out" for a similar or some other purpose and some shirts which his nephew might wear. The landlady said, "There is lots of clothes in the closet. Who will I give the trunk to and all that?" He said, "The society. They will take charge of everything. Do not give the key to anybody but Mr. P. or the board of trustees." The landlady said, "This ain't legal, Mr. L. You have to have it in black and white." He said, "Well, Mr. P. is to come to-night, and I will send him word to come to the hospital. . . . If I am not cremated, I want a little

headstone put up, a grave and a headstone with perpetual care." The landlady said, " I guess there won't be much left after that." He said, " I don't want an expensive one, I want a little neat stone. What is left I want the society to have." The trial judge expressed the opinion that the evidence did not compel him to hold that the gift was incomplete. He ordered that the bill be dismissed, and reported the case to this court for such decree as equity and justice might require. *Held,* that, as the intestate did not intend to give to the society all of the clothing in the trunk nor all of the money, his delivery of the key of the trunk to the landlady was not intended to change the title to a part of the contents and therefore must fail as to the whole, and that there was no sufficient delivery of the clothes in the closet, what was said about them being rather a direction to hand them to the society than an indication of an intention to part at that time with the title, and, moreover, that it did not appear that the landlady agreed or supposed that she was acting for or in behalf of the defendant or the society in taking the key, but that it appeared rather that she intended to act and supposed she was acting to keep the property safely for the intestate, thinking that his estate could not be disposed of without a writing; consequently, that there was no delivery of any property sufficient to constitute a *donatio causa mortis,* and a decree was ordered for the plaintiff.

HAMMOND, J.  This was a bill in equity filed by the administrator of the estate of Nils J. Liljestrom, deceased, to compel the delivery to him of personal property claimed by him to be estate of said Liljestrom, against the defendant, who holds and claims the property by virtue of an alleged *donatio causa mortis* to the Skandinaviska Föreningen, a voluntary association of which the plaintiff is president and a trustee, and of which Liljestrom was a member at the time of his death.

The trial judge * having found certain facts dismissed the bill; and the case is before us upon a report, such decree to be entered as justice and equity may require.

After stating the facts, the trial judge makes the following statement: " I do not think this evidence compels me to hold the gift incomplete. The burden seems to me upon the administrator, as the plaintiff. There is a possibility Liljestrom contemplated doing something further. It is also possible he did not."

Inasmuch as this is a proceeding in equity and is before us upon facts found, and by the terms of the report such decree is to be entered as justice and equity require, it becomes our duty to examine the facts and come to our own conclusion, giving due weight to the conclusion reached by the trial judge.

* *Wait,* J.

We have carefully studied the facts and do not think they show a completed *donatio causa mortis.* The most that can be said is that they indicate a desire upon the part of Liljestrom that after certain of his property had been disposed of for funeral and burial purposes, the rest should go to the society represented by the defendant. He evidently was thinking of his whole estate and of its future disposition, and not simply of certain specified articles out of his estate.

But however that may be, there was no sufficient delivery. In this class of gifts, as in gifts *inter vivos,* there must be a delivery, a change of possession, which must be made for the purpose of passing the title *in præsenti.* The donor's title must pass and such must be the intention. The only difference in this respect between the two classes of cases is that where there is a gift *inter vivos* the change in the title is irrevocable and indefeasible, while in the case of a gift *causa mortis* the change is revocable and defeasible upon certain conditions. See *Harvey* v. *Duryea,* 183 Mass. 433, and the authorities there cited.

There is no evidence that before the death of Liljestrom he made any delivery to the defendant, but it is contended that a delivery was made to Mrs. O'Shea as the defendant's representative by his handing to her the key of the trunk containing some of the articles, and because she, after Liljestrom's death, handed the key and the trunk and other articles to the defendant. It is true a delivery need not be made to the donee, but may be made to some third person for him; and if after the death of the donor this person delivers the subject of the gift to the donee who accepts it, that is sufficient delivery.

The property of Liljestrom consisted of certain wearing apparel and $500 in money. Some of the wearing apparel was in the trunk and some was hanging up in the closet of his room which he occupied as a boarder in Mrs. O'Shea's house. The acts relied upon to show delivery took place on a Monday morning. Liljestrom was very sick and knew it. Before leaving his boarding house for the hospital " he handed her the key to his trunk and said : ' Here is the key to my trunk. Don't give it to anybody but the president, Mr. Peterson, or the board of trustees. Give it to them. There is $500 in a pig skin pocket

book in my trunk rolled up in my pants, and if anything happens to me there is a dress suit I am going to put on, and there is some clean under-wear and you can pick it out.' Mrs. O'Shea said, ' I hope there won't be nothing happen.' He replied, ' No, but you can never tell. There is some shirts there I suppose my nephew can wear.' Mrs. O'Shea said, ' Oh, there is lots of clothes in the closet. Who will I give the trunk to and all that ? ' He said, ' The society. They will take charge of everything. Do not give the key to anybody but Mr. Peterson or the board of trustees.'

" He also handed her two dollars as a gift to herself ; told her he gave her husband a small basket of tools, and gave her his silver watch and told her to take the watch and key to her own room and keep them till the president or board of trustees came and then give them to them. Mrs. O'Shea at the moment was brushing a coat for him to wear away and instead of taking the key, or after taking it, asked him to put it in a place she indicated, whence she subsequently took it. Mrs. O'Shea said to him, ' This ain't legal, Mr. Liljestrom. You have to have it in black and white.' He said, ' Well, Mr. Peterson is to come to-night, and I will send him word to come to the hospital. If he comes here you send him to the hospital. You can't tell what will happen.' Liljestrom said, ' If I am not cremated, I want a little headstone put up, a grave and a headstone with perpetual care.' Mrs. O'Shea said, ' I guess there won't be much left after that.' He said, ' I don't want an expensive one, I want a little, neat stone. What is left I want the society to have.' "

It is very plain that he did not intend that the society (whom the defendant represents) should have all the things in the trunk. He intended that upon his death the dress suit should be used as his burial clothes, that the " clean under-wear " should be " picked out " by Mrs. O'Shea either for a similar or some other purpose, and that his nephew might have some of the shirts to wear. None of these things, although in the trunk, were to go finally to the society. Nor did he intend that the whole of the money should go to it. Unless cremated he wanted a " little headstone put up, a grave and a headstone with perpetual care."

All this is inconsistent with the theory that he was then transferring to the society all his right and title to the clothes in his trunk. The delivery of the key of the trunk to Mrs. O'Shea could not therefore have been done with the intention of transferring to the society these articles as their property. And in view of all the circumstances of the case we are constrained to the view that the delivery of the key not being sufficient to change the title to a part of the contents must fail as to the whole. Nor was there sufficient delivery of the clothes in the closet. What was said about them was rather a direction to Mrs. O'Shea to hand them to the society than an indication of an intention to part then and there with the title.

Moreover it does not seem to us that Mrs. O'Shea agreed or supposed she was acting for or in behalf of the defendant or the society in taking the key. She certainly did not suppose that Liljestrom's purposes as to the disposition of his estate could be carried out without a writing, and we think she intended to act and supposed she was acting to keep the property safely for him rather than for the society. See as bearing somewhat on the question discussed in this case *Marshall* v. *Berry*, 13 Allen, 43, 46, and cases there cited, *McGrath* v. *Reynolds*, 116 Mass. 566, and cases there cited.

*Decree for the plaintiff.*

The case was submitted on briefs.

*V. E. Runo*, for the plaintiff.

*W. A. Thibodeau & G. L. Ellsworth*, for the defendant.