ARTHUR Y. MITCHELL, executor, *vs.* ARABELLA B. WEAVER & another.

Suffolk. March 28, 1922. — July 1, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Gift. Probate Court,* Jurisdiction. *Equity Jurisdiction,* Equitable replevin.

At the hearing in the Probate Court of a suit by an executor of the will of a woman for equitable replevin of war savings certificates, certificates of corporate stock, savings bank deposit books, liberty bonds and a promissory note, alleged to have been property of the testatrix of which the defendants had taken possession, the defendants contended that the property had been given to them in the lifetime of the testatrix. It appeared that the property described was in a safe deposit box at a trust company at the time of the death of the testatrix. The defendants were sisters of the testatrix and by the will were given the income from all of her property for their lives. There was evidence that the testatrix had taken one of the defendants to the office of the trust company and had told the officials that she wanted her to have the right of access to the deposit box, saying to her, "Just as soon as you hear of anything happening to me, go immediately to that box and remove everything in it. It is yours and you will need every cent;" that "she gave the defendants a key to the box and sent them a list of the property therein;" that subsequently one of the defendants returned the key to the testatrix, because, she said, "I did not wish to carry it around in my pocket any longer and I know I could go there to the box if anything

happened to her;" that in a letter to that defendant, the testatrix inclosed "a list of what is in my box," with a statement that she would send an extra key "when I find it." Other letters indicated a clear wish of the testatrix to give the property to the defendants, and in a document, signed by her and by three witnesses and in form a will, she expressed a wish that the defendants should "have everything now belonging to" her except what she personally had "arranged for." This document, although propounded for probate, was disallowed for want of proper attestation. The judge found on the evidence that no trust was created except the trust established by the will which was proved, and that on all the facts there was no delivery of the securities kept in the safe deposit box sufficient to sustain a gift *inter vivos* or *causa mortis*. *Held*, that

(1) The authority to open the safe deposit box terminated when the testatrix died;

(2) No actual delivery of the property whereby the donor relinquished dominion and control over it ever took place in her lifetime;

(3) The finding of the judge was warranted.

The recovery by an executor of a will of property which is part of the estate for which, if it can be obtained, he must account, presents an issue "relative to the administration of the estates of deceased persons," and under G. L. c. 215, § 6, the Probate Court has jurisdiction in equity to compel its delivery to the executor.

BILL IN EQUITY, filed in the Probate Court for the county of Suffolk on July 19, 1921, by the executor of the will of Alice M. Robinson, late of Boston, to establish the title of and to require the delivery to the plaintiff of certain savings bank books representing deposits in the banks, liberty bonds, war savings certificates, certificates of shares of corporate stock and a promissory note, all alleged to be in the possession of the defendants, Arabella B. Weaver and Annie B. Cushing, sisters of the plaintiff's testatrix, and to require their delivery to the plaintiff.

The defendants pleaded to the jurisdiction of the court under Equity Rule 9 on the ground "that statutory equitable replevin was not within the equity powers of the Probate Court" and that the court had no jurisdiction to hear and determine the question of title to the property described in the bill. They also demurred to the bill on the ground that the plaintiff had a complete and adequate remedy at law. The answer alleged that the property described in the bill was delivered to the defendants as a gift.

The suit was heard upon the plea, demurrer and the merits, by *Grant*, J. Material evidence is described in the opinion. The judge found on all the evidence that the defendants had not established any gift to them and that the plaintiff was entitled to recover, but, being in doubt as to the jurisdiction of the Probate

Court to entertain the bill, at the request of the parties he reported the case for determination of this court both upon the question of jurisdiction and whether, if the court had jurisdiction, his finding on the facts was warranted, such decree to be entered as justice and equity might require.

The case was submitted on briefs.

*E. A. Whitman & H. G. Fletcher*, for the plaintiff.

*J. E. Kelley*, for the defendants.

BRALEY, J. The plaintiff is the executor of the will of Alice M. Robinson, which has been proved and allowed. The testatrix, a teacher in the public schools, left a small estate acquired from her earnings and by inheritance from her father, and the proceeds of a policy of insurance upon the life of a deceased son. It is contended by the petitioner that part of the assets of the estate consisting of war saving stamps, savings bank deposit books, stock, bonds and other securities now in the possession of the defendants, her only heirs at law and next of kin, belong to the estate but are so secreted and withheld that they cannot be replevied in an action at law. The record presents two questions, namely, whether there was a perfected gift to the defendants by the testatrix, and whether the court of probate had jurisdiction of the suit.

The securities in question were kept by the testatrix in a safe deposit box with a trust company, and at the date of her death "some diamonds, jewelry and one bank deposit book, were in her room." After making her will, in which she left all her property to the plaintiff and executor in trust to pay the income for life to the defendants or the survivor of them, and at their death to distribute the entire estate to the plaintiff's grandson, she took the defendant Mrs. Weaver to the office of the trust company, "and told the officials that she wanted her to have right of access to the . . . deposit box." This defendant testified that the testatrix at that time said, "Just as soon as you hear of anything happening to me, go immediately to that box and remove everything in it. It is yours and you will need every cent." It is also found that "she gave her sisters a key to the box and sent them a list of the property therein." Subsequently Mrs. Weaver voluntarily returned the key to the testatrix, because, she said, "I did not wish to carry it around in my pocket any longer and I knew I could

go there to the box if anything happened to her." I further appeared that in a letter to Mrs. Weaver the testatrix enclosed "a list of what is in my box," with a statement that she would send an extra key "when I find it." In a letter to the defendant Miss Cushing, she said, "On other side I have written numbers of U. S. Bonds I have and place they are to be found. They are so easily lost and misplaced you should know about them," and at the end of the list she states that one of the bonds scheduled has been exchanged, "will not receive it until January. The rest are in my box at South Boston Trust." The final letter to Miss Cushing, written February 18, 1921, just before leaving her home for an operation from the effects of which death ensued the same day, says, "When you were at 31 Parkman Street six years ago, I created a trust fund thinking with a house to cover your head and $150 a year, sure to come in, I could die easy knowing you would have enough to carry on, with seven bank books containing about two thousand. It would not have been necessary for me to send the accompanying to you had Belle [Mrs. Weaver] been kind enough to keep the deposit box key; as it is you will be obliged to pay a tax on everything even the liberty bonds. Please keep the accompanying if I should ever need them. You certainly will need them." Then follows the list of the bonds and the income therefrom amounting to $227.98 from which $50 is deducted with this comment, "If I have an operation $50 a year less for I shall be obliged to get Mr. Mitchell to sell a bond to pay expenses." Enclosed with the letter was the following instrument dated February 12, 1921, ten days before her death, signed by her and by three witnesses. "To whom it may concern: This is to certify that I am in my right mind and perfectly able to dispose of my belongings. I wish my two sisters Mrs. Arabella B. Weaver and Miss Annie B. Cushing, both of Dorchester, Mass. to have *everything* now belonging to me, except what I have previously arranged for. They, my two sisters, are to take possession wherever placed and divide between them, *just as they wish,* without outside interference. It is my wish that they do *exactly as they wish* with my possessions. All my bills and indebtedness will be paid by Mr. Arthur Y. Mitchell, 52 Temple Place, Old Colony Trust Company, as previously arranged for." And before she went to the hospital she wrote Mr. Mitchell, "I am obliged to go to a hospital for an

operation. Will you please sell one of my bonds so I can have plenty to pay expenses?"

The instrument just quoted, although propounded for probate, was disallowed for want of proper attestation, and can have no force as a testamentary disposition of the whole or any part of her estate.

The judge rightly found on the evidence that no trust was created except the trust established by the will, and that on all the facts there was no delivery of the securities kept in the safe deposit box and in the room of the testatrix sufficient to sustain a gift *inter vivos* or *causa mortis*. The authority to open the safe deposit box terminated when the testatrix died and it is clear that no actual delivery of the property whereby the donor relinquished dominion and control over it ever took place in her lifetime. *Parish* v. *Stone*, 14 Pick. 198, 203. *McGrath* v. *Reynolds*, 116 Mass. 566. *Day* v. *Richards*, 197 Mass. 86, 87, and cases cited. *Nelson* v. *Peterson*, 202 Mass. 369, 371. The numerous requests of the defendants resting on the merits were denied rightly.

The answer however avers that the plaintiff has a plain and adequate remedy at law, and that the court was without jurisdiction. It is said in Pomeroy, Eq. Jur. (4th ed.) § 185, where the question of concurrent jurisdiction is considered, that "where the final relief is substantially a recovery of chattels, the jurisdiction . . . really rests upon the fact that the only relief which the plaintiff can have is the possession of the identical thing, as this remedy cannot with certainty be obtained in any common-law action." See notes (e) and (d) for a collection of cases in which the remedy has been recognized and applied. And in *Pierce* v. *Lamson*, 5 Allen, 60, a suit in equity to recover a mortgage, the court say, it was brought under "one of the most ancient heads of chancery jurisdiction." The plaintiff was entitled to all the assets in the form in which they were left by the testatrix, and to "settle the estate without incurring the expense, delay and trouble of bringing suits." *Sears* v. *Carrier*, 4 Allen, 339. The bonds were intangible property in the possession of the defendants who were not obliged to expose them to the replevying officer, and the remedy by replevin, or in tort for conversion, would not provide adequate relief. It was unquestioned in *Nelson* v. *Peterson*, 202 Mass. 369, that equity had jurisdiction to compel the

delivery to the plaintiff as administrator of certain wearing apparel and "$500 in money" withheld by the defendant as having been given to him by the intestate. The remedy of equitable replevin also has been fully recognized and applied in *Strickland* v. *Fitzgerald,* 7 Cush. 530. *Sears* v. *Carrier,* 4 Allen, 339. *Brigham* v. *Home Life Ins. Co.* 131 Mass. 319. *Holden* v. *Hoyt,* 134 Mass. 181. *Davis* v. *Sullivan,* 141 Mass. 76. *French* v. *Peters,* 177 Mass. 568. *Hodgkins* v. *Bowser,* 195 Mass 141. *Herrick* v. *Dennett,* 203 Mass. 17. *Homrich* v. *Robinson,* 221 Mass. 308.

We are of opinion that this defence cannot prevail. By St. 1877, c. 178, § 1, St. 1883, c. 223, §§ 1, 2, R. L. c. 159, § 1 (see now G. L. c. 214, § 1), "The supreme judicial and superior courts shall have original and concurrent jurisdiction in equity of all cases and matters of equity cognizable under the general principles of equity jurisprudence and, with reference thereto, shall be courts of general equity jurisdiction." It is manifest that the present suit could have been maintained in either of those courts. By St. 1880, c. 163, the Probate Court acquired original concurrent jurisdiction with this court · over all matters relating to the termination of trusts under wills, deeds, indentures or other instruments. See Pub. Sts. c. 141; St. 1892, c. 116. By St. 1891, c. 415, § 1, it was given "jurisdiction in equity, concurrently with any other court having jurisdiction of proceedings in equity, of all cases and matters relating to the administration of estates of deceased persons or to wills or trusts created by will, and such jurisdiction may be exercised upon petition, according to the usual course of proceedings in the probate courts." R. L. c. 162, § 5. The Sts. of 1910, c. 100, 1915, c. 151, and 1917, c. 126, further extended the jurisdiction to matters not material here, but which are codified with preceding enactments relating to the general subject in G. L. c. 215, § 6. It was decided in *Abbott* v. *Gaskins,* 181 Mass. 501, that under Pub. Sts. c. 142, § 14, the Probate Court had no jurisdiction in equity to confirm and enforce an agreement of compromise under a will, a proceeding unknown to general equity jurisprudence, but created by statute, and over which this court when that case was decided May 23, 1902, had exclusive jurisdiction. St. 1861, c. 174, § 1. Pub. Sts. c. 142, § 13. R. L. c. 148, § 14. But St. 1903, c. 222 (see now G. L. c. 204, §§ 13, 14), conferred concurrent jurisdiction on the Probate Court. See St. 1902, c. 538.

The general equity powers of this court and the Superior Court included jurisdiction over equitable replevin. "No newly created special statutory subject of equity was created." And a like and concurrent jurisdiction has been granted by statute to the Probate Court in the settlement of the estates of deceased persons. The recovery of property which the judge has found was part of the estate for which the plaintiff if it could be obtained must account, clearly presented an issue "relative to the administration of the estates of deceased persons," and the Probate Court as well as the Supreme Judicial Court and the Superior Court had jurisdiction in equity to compel its delivery to the plaintiff. *Bailey* v. *Dillon,* 186 Mass. 244, 247, 248. *Sibley* v. *Maxwell,* 203 Mass. 94. *Burroughs* v. *Wellington,* 211 Mass. 494, 496. The cases of *Baldwin* v. *Wilbraham,* 140 Mass. 459, *Abbott* v. *Gaskins, supra,* and *Moseley* v. *Moseley,* 240 Mass. 1, relied on by the defendants are distinguishable for reasons sufficiently stated. *Williams* v. *Nelson,* 228 Mass. 191, 194.

In accordance with the terms of the report a decree for the plaintiff is to be entered.

*Ordered accordingly.*