COMMISSIONER OF BANKS *vs.* COMMONWEALTH-ATLANTIC NATIONAL BANK OF BOSTON & others.

Suffolk.   January 17, 1924. — February 29, 1924.

Present: RUGG, C.J., PIERCE, CARROLL, & WAIT, JJ.

*Trust Company,* In liquidation. *Equity Jurisdiction,* Suits relating to liquidation of banks: determination of claim considered doubtful but not rejected by commissioner of banks. *Statute,* Construction.

In a suit in equity by the commissioner of banks in possession of the property and business of a trust company against trustees of a building trust and a bank to which the trustees had assigned an alleged claim against the trust company, the following facts appeared: The books of the trust company showed a credit balance in the name of the trustees. The balance was caused by the deposit of a check of the president of the trust company which caused a large overdraft of his account. Without the check, there would have been a debit balance in the account. The commissioner contended that the president had no authority to draw the check making the overdraft. The commissioner allowed a claim by the trustees, stamping on the certificate of proof the words, "Subject to rights of set-off hereafter to be determined," and later,

under a decree of court which " authorized " the payment of a dividend " upon all ordinary claims . . . of which the commissioner of banks has received legal proof, and of which lists were filed," paid a dividend to the bank as assignee of the claim without prejudice to rights of the parties to dispute the validity and amount of the claim and under an agreement that it was to be repaid in whole or in part in accordance with a final decree " in any action at law or suit in equity that either party may deem it necessary to institute." The plaintiff sought an adjudication as to the validity of the claim and a repayment of the amount of the dividend. *Held,* that

(1) The provisions of G. L. c. 167, § 36, had enlarged the jurisdiction of the Supreme Judicial Court in equity sufficiently to include jurisdiction of the suit;

(2) While commonly the decree of the court ordering the payment of the dividend would be conclusive, and a doubt in the mind of the commissioner as to the validity of a claim listed as provided in § 29 of the statute ought to be presented plainly to the court before entry of a decree under § 31, in the circumstances of the case, the parties were bound by their written communications and the defendant could not rely on the force of the decree in defence of the suit.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on December 3, 1923, by the commissioner of banks in possession of the property and business of the Cosmopolitan Trust Company against the Commonwealth-Atlantic National Bank of Boston and the surviving trustees of the Washington-Essex Building Trust, seeking an adjudication of the question, whether the Washington-Essex Building Trustees had any claim against the Cosmopolitan Trust Company and, if so, of the amount of such claim, and that a decree might be entered ordering the defendant bank to repay to the plaintiff a dividend of $30,807.98 paid to it in the circumstances described in the opinion.

In the first paragraph of the answer, the defendants alleged that the court did not have jurisdiction of the suit; and that, if the claim of the defendants against the trust company was in dispute, the defendants were entitled to have such issue tried according to the course of common law and by jury. There was an agreed statement of facts. Material facts are described in the opinion.

The suit was reserved by *DeCourcy,* J., for determination by the full court upon the bill and the first paragraph of the answer, and it was agreed by the parties that, if it should be

determined that the court had jurisdiction, the further question was reserved, whether the suit was barred by reason of the facts stated in the agreed statement of facts.

*H. W. Brown,* for the plaintiff.

*E. F. McClennen,* (*A. L. Newton* with him,) for the defendant.

RUGG, C.J.    This suit in equity is reported for the decision of two questions: first, whether this court has jurisdiction to entertain the cause, and second, whether on the bill, answer and agreed facts the suit is barred.

The determination of both questions rests upon these facts in substance: The plaintiff on September 25, 1920, took and has since retained possession of the property and business of the Cosmopolitan Trust Company and is engaged in liquidating its affairs.    The defendant bank is the assignee of an alleged claim against the trust company arising from the fact that, at the time when the plaintiff took possession of its property and business, its books showed a credit balance on a deposit account in the name of the Washington-Essex Building Trustees (hereafter called the trustees), amounting to $308,079.79.    The bill alleges that in truth no sum whatever was due and owing from the trust company to the trustees for the reason that an entry made to their credit on April 1, 1920, of $365,000 was made improperly, illegally and without authority by employees of the trust company, so that, in order to reflect the real state of that account on September 25, 1920, the $365,000 ought to be charged against it, thus converting an apparent credit balance of $308,079.79 into an actual debit balance of $56,-920.20.    There are averments in support of this allegation that the trustees received on April 1, 1920, in payment of his personal indebtedness to them, a check for $365,000 from Max Mitchell, then and for some years theretofore, as the trustees well knew, the president, a director, and the chief executive officer in charge of all the affairs of the trust company.    This check on the same day was deposited to the credit of the account of the trustees in the trust company, which account had been opened only four days earlier by a small deposit.    According to the books of the trust com-

pany, Mitchell's deposit against which he was entitled to draw checks, including deposits made on that day, was $188,578.87. Including other charges against that account, it was overdrawn at the close of business on that day, according to the books of the trust company, in the amount of $226,579.13. Mitchell had no authority to make an overdraft on his account. For a considerable period prior to this date Mitchell had been engaged in defrauding the trust company, all without authority of its officers, by causing entries to be made to his account, which were unauthorized, illegal and fraudulent, for which the trust company received no consideration and which were offset on the books of the trust company by worthless, illegal and fraudulent charges caused to be made by Mitchell to other accounts, the total amount being far in excess of Mitchell's apparent credit balance on that date, so that, when he gave the check for $365,000, he had no right to draw on the trust company for any sum. Notwithstanding these facts, the check of Mitchell for $365,000 to the order of the trustees was treated as valid by the receiving teller and bookkeepers of the trust company, all acting under instructions from Mitchell but without the knowledge of other executive officers of the trust company.

On or about January 24, 1921, the trustees filed with the plaintiff proof of claim against the commercial department of the trust company for the balance shown to their credit, viz., $308,079.79. Many interviews took place between the liquidating agent of the plaintiff in charge of the trust company and representatives of the defendant, in which the agent said that, although in doubt, he could not allow the claim, and that in his opinion there was a possible defence or set-off arising from the fact that Mitchell had used without right funds of the trust company in purchasing preferred shares of the Washington-Essex Building Trust, and also other possible defences or set-offs, which he had in mind (but did not then state in detail) and desired to investigate and consider, including the one made the basis of the present suit. Finally, on or about August 15, 1921, the plaintiff through his liquidating agent decided to allow the claim

" subject to rights of set-off," in order to save all possible rights of the plaintiff and of the trust company with respect thereto; and he issued to the trustees a certificate of proof of claim for the full amount claimed, stamping thereon the words, " subject to rights of set-off hereafter to be determined." This certificate was subsequently assigned and the plaintiff assented thereto in writing but with the same words just quoted stamped on the back of the certificate above his assent.

The plaintiff, on or about December 1, 1921, filed a list of the claims against the trust company regularly proved before him prior to May 2, 1921, on which was the claim of the trustees, and thereafter, on or about October 22, 1922, notified the defendant that it was not entitled to said deposit account for the reasons stated in the present bill. On or about November 8, 1922, a decree was entered under G. L. c. 167, § 31, authorizing payment by the plaintiff of a dividend of ten per cent on all ordinary claims in the commercial department of the trust company of which the plaintiff had received legal proof according to the lists on file, with exceptions not here material. Thereafter, the plaintiff, first declining to pay such dividend to the defendant, finally at its instance agreed to pay such dividend upon the conditions that it be accepted without prejudice to rights of the plaintiff and of the defendant to dispute the validity and amount of the claim, and that it be repaid in whole or in part in accordance with the final decision " in any action at law or suit in equity that either party may deem it necessary to institute."

First. The Supreme Judicial Court has jurisdiction in equity of all matters cognizable under the general principles of chancery jurisprudence. G. L. c. 214, §§ 1, 2. *Boston & Maine Railroad* v. *Sullivan*, 177 Mass. 230, 234. It is provided by G. L. c. 167, § 36, that this court " shall have jurisdiction in equity to enforce the provisions of sections twenty-two to thirty-five inclusive, and to act upon all applications and in all proceedings thereunder." The sections specified are those relating to the liquidation of banks (which includes trust companies, G. L. c. 167, § 1) by the

commissioner of banks. The special provisions of § 36 were unnecessary in order to clothe this court with general equitable jurisdiction, for it already had that. To give § 36 merely that interpretation would impute to the Legislature a footless purpose. It is not fairly inferable from the statutory words and their context that that section was intended to confer upon this court sole chancery jurisdiction touching the liquidation of banks and utterly to exclude the Superior Court from that field. The Superior Court, as well as the Supreme Judicial Court, has original and concurrent jurisdiction of all matters of equity cognizable under the general principles of chancery jurisprudence. *Williams* v. *Nelson,* 228 Mass. 191, 194. G. L. c. 214, §§ 1, 2. *Mitchell* v. *Weaver,* 242 Mass. 331, 337. That court hardly would be excluded by the Legislature from a field already within its jurisdiction without clear words showing an unmistakable purpose to accomplish that result. The provisions of § 36 cannot be interpreted as making exclusive in the Supreme Judicial Court a jurisdiction which but for that section would be original and concurrent both in the Supreme Judicial Court and in the Superior Court. That section cannot be regarded as standing on the same footing, with respect to ordinary jurisdiction in equity, as the statutes construed in *Baldwin* v. *Wilbraham,* 140 Mass. 459, *Langmaid* v. *Reed,* 159 Mass. 409. It hardly can be supposed that parties cannot now at their election resort to the Superior Court for relief in equity as to indifferent matters arising in the course of the liquidation of a bank and not conferred exclusively upon the Supreme Judicial Court by the liquidation statutes. It is a canon of statutory interpretation that no enactment can be presumed to have been vain or meaningless. It must be assumed to have been intended to produce some effective result. Barrenness of accomplishment cannot be attributed to the legislative department of government if any other result is reasonably possible. *Commissioner of Banks in re Prudential Trust Co.* 244 Mass. 64, 70, and cases there collected.

Without undertaking to delimit the scope of § 36 further than is required for the present decision, it is enough to say

that that section enlarges the jurisdiction in equity of this court sufficiently to include the case at bar. The facts make the case at bar special and peculiar. The commissioner did not reject the claim. On the other hand, it is to be inferred that both parties understood that he did not fully and unreservedly receive the claim as true and just, and propose to list it as such to the court for final action. The allegations of the bill and the agreed facts already summarized make plain the unsettled state of the claim. The issuance of the certificate of proof bore upon its face a qualification showing the unstable and questionable nature of the claim. In the light of the conferences and negotiations between the parties, the words " subject to rights of set-off hereafter to be determined " stamped on the certificate of proof accepted by the defendant, indicate as still open the broad inquiry whether the claim ought to be paid. The word " set-off " is not there used in a narrow legal sense, but in an enlarged signification as including any grounds of defence or attack which might offset or overcome the liability apparently arising from the state of the books of the trust company. The defendant accepted this form of certificate of proof and of assent to the assignment of it without objection. It did not demand either an unqualified assent to the validity of its claim or an unequivocal rejection of it. Both parties agreed to leave the claim in a doubtful region lying between the two extremes of unqualified acknowledgment as valid on one side, and plain rejection on the other side, both of which would have been free from doubt. The parties were content to leave the whole matter for the time being thus uncertain and open for future final determination. Without pausing for nice inquiry whether under all the circumstances relief might be afforded by general principles of chancery, the provisions of § 36 confer upon this court jurisdiction to adjudicate in equity upon the rights of the parties in the situation here presented. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 240 Mass. 254, 257.

There is nothing at variance with this conclusion in *John A. Wogan, Inc.* v. *Tremont Trust Co.* 242 Mass. 505.

Second.  This suit is not barred.  The singular conduct of the parties touching this claim has the effect of still keeping open for settlement by litigation the questions presented on this record.  The liquidation statute makes no definite provision as to the issuance by the commissioner of banks of a certificate of proof of claim touching claims which he thinks are just.  But there is no legal objection to that course.  When in unqualified form it affords convenient evidence that probably the claim will be listed in court and, if no further objection is raised, ultimately its owner will receive his equitable share in the assets of the trust company. Where issued in a qualified form, as in the case at bar, it affords convenient form for written statement of the rights of the parties.  Commonly the decree of the court ordering a dividend would be conclusive and not open to dispute thereafter.  Doubt in the mind of the commissioner of banks as to the validity of a claim listed as provided in § 29 ought to be plainly presented to the court before decree for dividend is entered under § 31.  But in the case at bar the conduct of the parties respecting the issuance and assent to assignment of the certificate of proof of claim, the statements stamped thereon and the agreement made after the decree as to receipt and repayment of the dividend by the defendant, show that the parties were bound by their written communications as to their respective rights and that the defendant cannot rely upon the force of the decree for dividend to it.  It is to be noted, also, that the decree of the court as entered under G. L. c. 167, § 21, simply " authorized " the commissioner of banks to pay a dividend " upon all ordinary claims . . . of which the commissioner of banks has received legal proof, and of which lists were filed."  That decree did not " direct " such dividend to be paid as might have been done under § 31.  It is possible that the decree was entered in the permissive rather than the mandatory form in order to leave to the commissioner of banks the option to decline payment in instances where the interests of all depositors required that a particular claim be disputed, and especially in a case like the present.  Confin-

ing this decision to the precise facts set forth in the agreed statement of facts, the conclusion is that the plaintiff is not barred from prosecuting in this proceeding the matters alleged in his bill.

*Ordered accordingly.*