HENRY C. BRINE, executor, *vs.* BLANCHE B. PARKER.

Suffolk. March 5, 1930. — March 25, 1930.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Gift. Equity Pleading and Practice,* Master: findings, report, recommittal.

The issue in a suit in equity was whether a man had made a completed gift of certain securities to a woman before his death. There was evidence that, several years before his death, a safe deposit box at a bank had been hired under an arrangement whereby he and the woman each had a key and they were joint tenants with right of exclusive access to the survivor; that, a year before his death, the man transferred certain securities into the woman's name, caused her to indorse them in blank and placed them in the box in an envelope marked "Property of" the woman, with her address; that the man had the woman indorse the certificates to enable him to use them in case of her death and also to enable him to change investments for her; and that the income from such securities thereafter was received by the woman directly. A master found that there was a present perfected gift of the securities to the woman. *Held,* that

(1) It could have been found that the title and control of the securities passed to the woman when they were deposited in the box by the man;

(2) The evidence concerning the man's reasons for having the woman indorse them and his thought concerning their disposition in

case of her death did not necessarily prevent a finding that he had made a completed gift;

(3) There was no error in the master's finding.

There was further evidence in the suit in equity above described that, several years before his death, the man placed a second group of securities, indorsed by him in blank, in the safe deposit box in an envelope bearing a statement signed by him: "All my securities in this safety deposit box I desire to become the property of . . . [the woman] the day before my demise — a gift to her from me"; that he told her, in case of his death, to take all such securities, to sell them and to buy an annuity for herself. The master found that the man had intended to retain title to the second group of securities during his life, but desired that they should become the woman's property on his death; and that there was no present gift of such securities. *Held*, that the finding was warranted: the facts did not require as a matter of law a conclusion that there had been a completed gift before the man's death.

Further evidence in the suit in equity above described, that a third group of securities was in a safe deposit box in another bank at the time of the man's death; that they stood in his name unindorsed; that he had told the woman that he was going to transfer them to her; and that he had handed her the key to the box with the statement, "Here is another box for you to take care of," warranted a conclusion that there had been no gift of such securities.

The rule to the master in the suit in equity above described required him to hear the parties and their evidence and report his findings to the court, together with such facts and questions of law as either party might request. A judge denied a motion that the report be recommitted on the ground that the master should have reported certain statements by the man and the facts upon which the master concluded that the man had not intended that the second and third group of securities become the property of the woman. *Held*, that

(1) If the master had included such matters in his report, they would not, as a matter of law, control or change his findings;

(2) The rule did not require the master to report evidence;

(3) The motion was addressed to the discretion of the judge;

(4) There was no error of law in its denial.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on March 26, 1929, and transferred to the Superior Court for final disposition.

The defendant filed a cross bill. The bill and cross bill, and material facts found by a master to whom the suit was referred, are described in the opinion. The suit thereafter was heard by *Macleod*, J., who denied a motion by the defendant that it be recommitted to the master, and by whose order there were entered an interlocutory decree

confirming the report and a final decree adjudging the property in groups A and B to belong to the defendant and the property in groups, C, D and E to belong to the estate of Grozier, and ordering the defendant to deliver to the plaintiff the property in groups C and D.. The defendant appealed from the order on her motion to recommit, and from the interlocutory and final decrees. The plaintiff appealed from the final decree.

*A. C. Blake*, for the defendant.

*L. D. Jennings*, for the plaintiff.

SANDERSON, J. This is a bill in equity brought by the executor of the will of William A. Grozier seeking to recover from the defendant certain securities in her possession which she claims as gifts. The defendant by a cross bill seeks to establish her title to certain stocks and savings bank deposits in the possession of the plaintiff. The master appointed in the case has classified these securities into certain groups designated respectively by letters.

The decree is based upon the master's findings to the effect that the property described in groups lettered A and B is owned by the defendant, and the bank books and other securities described in groups C, D and E belong to the plaintiff as executor of the will of Grozier. The plaintiff contends that he as executor is entitled to the stocks described in group B and the defendant contends that the stocks and property described in all of the groups should have been decreed to be the property of the defendant. Group A is a list of bonds delivered to the defendant by Grozier with the intention of making a gift. These have since been retained by her and no contention is now made that the defendant is not entitled to them.

Grozier died July 18, 1928, when sixty-four years of age. He left surviving him a wife to whom he was married in 1896. Their only child died in 1900. Grozier frequently visited the home of the defendant and made many trips with her. On March 6, 1925, he executed a will, which was duly probated, by which he gave to his wife all his real and personal property, with certain exceptions, and to the defendant his rights in a certain trust fund.

On February 28, 1924, a box was rented at the Boston Safe Deposit and Trust Company under an arrangement whereby the defendant and Grozier became joint tenants with right of exclusive access to the survivor. Each had a key to the box and it was known between them as her box; she paid the rent and they continued to hold the box under this arrangement until Grozier's death. It was taken for the purpose of placing in it securities which Grozier wanted the defendant to have so that she would be protected after his death. For many years he had rented a box at the National Shawmut Bank. On April 27, 1928, about two weeks before he was stricken with his last illness, he arranged for a larger box to which the defendant was authorized to have access, and when giving her a key thereto said, "Here is another box for you to take care of." The smaller box was then given up. The larger box was taken for the purpose of keeping therein a large record book of his investments. This book has disappeared.

On May 12, 1928, Grozier suffered a shock which resulted in his death on July 18, 1928. On May 14, 1928, the defendant visited the boxes at the National Shawmut Bank and the Boston Safe Deposit and Trust Company and removed all bank books and securities which they contained. The stocks transferred to the defendant set forth in group B and the stock standing in Grozier's name, indorsed in blank by him, described in group C, were at the time of their removal by the defendant in the box at the Boston Safe Deposit and Trust Company, and the stocks and other securities in Grozier's name set forth in groups D and E were in the box at the National Shawmut Bank. In the latter part of July, 1928, the defendant without the knowledge of her counsel sold the stocks described in group B and deposited the proceeds in a safe deposit box in Providence, Rhode Island. By advice of counsel she has repurchased some of these stocks and the balance of the proceeds is still held. On October 5, 1928, she returned to the box in the Boston Safe Deposit and Trust Company the certificates of stock referred to in group D.

About the first of April, 1928, Grozier, through a friend, sought legal advice as to the effect of a transfer of stock where

new certificates are issued in the name of the transferee, indorsed by him and returned to the transferor, who places them in a safe deposit box to which each has access, the transferee receiving and keeping the dividends during the life of the transferor whose intention is that after his death the transferee shall own the stock. The advice received in reply to the inquiry was that no gift could be made to take effect at death except by will, and that in order to have a completed gift there would have to be an unqualified delivery before the donor's death.

In April and September, 1927, Grozier caused the stock named in group B to be transferred into the name of the defendant and, after procuring her indorsement in blank upon the certificates, placed them in an envelope upon which was written, "Property of Miss Blanche B. Parker, 68 Johnson Ave., Winthrop, Mass. April 18, 1927," and deposited them in the box at the Boston Safe Deposit and Trust Company. The master found that he had the certificates indorsed in blank thinking that in case of the defendant's death he might cause the stocks to be transferred to him, and also perhaps to enable him to change investments for her if he deemed it advisable. Some of these stocks were mentioned by Grozier to others as having been given to the defendant. These stocks and also bonds in group A were listed by Grozier in books which he prepared and gave to the defendant. The income therefrom was subsequently received directly by the defendant, and it was thereafter Grozier's custom to make up a list of the amounts of income so received by the defendant from these stocks and from the bonds, and to pay her by check the difference between such amounts and the amount of her allowance from him, which from that time on was at the rate of $130 a week. The master found that Grozier intended to make a gift to the defendant of the stocks in group B at the time he had the certificates made out in her name, procured her indorsement thereon, and placed them in the box at the Boston Safe Deposit and Trust Company. He also found, so far as it was a question of fact, that there was a present perfected gift to the defendant of the securities in this group. It was for the master to

say whether the indorsement on the envelope containing the securities named in group C, hereinafter quoted, had any significance in determining the rights of the parties in the property listed in group B. His finding that so far as it was a question of fact there was a present perfected gift of the securities in group B must have been made upon all the evidence in the case, and we cannot say that there was error in his conclusion that the gift became complete when the certificates had been indorsed by the defendant and placed in the deposit box. *Russell* v. *Webster*, 213 Mass. 491. If the gift was then complete by delivery and acceptance, the reason for having the certificates indorsed in blank, and the testator's thought concerning what he might do with them in case of her death, would not necessarily defeat the gift. It could still have been found that the title, dominion and control had passed to the defendant.

The certificates of stock in group C standing in Grozier's name and indorsed in blank by him were in an envelope in the box in the Boston Safe Deposit and Trust Company bearing the indorsement "Boston, Sept. 29, 1925. To whom it may concern: All my securities in this safety deposit box I desire to become the property of Blanche B. Parker, 68 Johnson Ave., Winthrop, Mass. the day before my demise — a gift to her from me — William A. Grozier." He told her in case of his death to go down to the box, print or typewrite her name on the certificates and take all the securities and sell them and buy an annuity. On July 6, 1928, she delivered the certificates in this group to her counsel, who had new certificates issued in her name. These are still held and the dividends thereon have been deposited in a special account. A list of securities prepared by Grozier and given to the defendant, on December 14, 1926, included all of the bonds in group A, with one exception, and all of the securities in group C, as well as two which were later transferred to the defendant and appear in group B. The finding of the master that the deceased intended to retain title to the securities named in group C during his life, but desired that they should become the property of the defendant on his decease, and that there was no gift of the securities, is not inconsistent

with the other facts set forth in the report and is controlling in determining the title to this group of securities. The nature of the title of the defendant and Grozier in the deposit box which was known between them as hers, and the significance of placing the securities therein, were facts to be weighed by the master with the other evidence in the case. These facts did not require the conclusion that there had been a completed gift before Grozier's death. Upon the findings the gift was not completed during the lifetime of Grozier, but was testamentary in character. *Howe* v. *Ripka*, 199 Mass. 359. *McKenna* v. *McKenna*, 260 Mass. 481. What the rights of the parties would be upon the facts found concerning the taking possession of the securities listed in this group during the lifetime of Grozier and causing new certificates to be issued, if the testator's intention had been found to be as stated on the envelope containing them, need not be decided. See *Herrick* v. *Dennett*, 203 Mass. 17, 25. The case of *Graham* v. *Barnes*, 259 Mass. 534, is distinguishable in its facts. In the conclusion that the securities described in group C are a part of the estate of William A. Grozier we find no reversible error.

The securities described in group D, standing in the name of Grozier unindorsed, having been removed by the defendant from the box at the National Shawmut Bank, were on July 6, 1928, placed in the box at the Boston Safe Deposit and Trust Company. The significance of conversations between Grozier and the defendant concerning certain securities in this list, to the effect that he was going to transfer them to her and of his statement when he delivered to her the key to the box at the National Shawmut Bank was for the master to determine. *Nelson* v. *Peterson*, 202 Mass. 369. *Mitchell* v. *Weaver*, 242 Mass. 331. *Perry* v. *Leveroni*, 252 Mass. 390. *Chambers* v. *McCreery*, 98 Fed. Rep. 783. They do not as matter of law affect the validity of the finding. The conclusion that there was no gift of these securities and that Grozier had no intention that they should become the defendant's property at any time is decisive as to the title to them.

The securities described in group E consisting of bank

books and shares of stock taken by the defendant from the deposit box in the National Shawmut Bank were returned by her to the box in July, 1928, where later they were found by the plaintiff. For reasons which have been stated in connection with securities named in group D, the findings of the master that Grozier had no intention that the securities described in this group should be the property of the defendant at any time, and made no gift of them to her, are conclusive as to the rights of the parties.

The motion to recommit the master's report was based upon the contention that he should report all statements of Grozier, believed by the master to have been made to the defendant and others at the time of the delivery of the securities, lists of securities, and safe deposit box key; that he should include the facts as to statements made by the donor of his intention respecting the two safe deposit boxes and in connection with handing her any lists, or in general as to his intentions; and also should include the facts on which he had come to the conclusions that the deceased had no intention that the securities in group D and E should become the property of the defendant at any time. If the evidence appearing in the affidavit in support of this motion had been reported by the master this would not as matter of law control or change the findings of fact made by him. The rule to the master required him to hear the parties and their evidence and report his findings to the court, together with such facts and questions of law as either party might request. This form of order of reference did not require the master to report evidence even though requested to do so by a party. *Daniels* v. *Daniels*, 240 Mass. 380.

The motion to recommit was addressed to the discretion of the trial judge and in his refusal to allow it we find no reversible error. *Brown* v. *Little, Brown & Co.* 269 Mass. 102, 105. *Kilkus* v. *Shakman*, 254 Mass. 274, 277. *Chamberlain* v. *Henry*, 263 Mass. 63, 65. *Parker* v. *Page*, 270 Mass. 167, 173.

*Interlocutory and final*
*decrees affirmed.*