RICHARD S. BOWERS, administrator, vs. LLOYD A. HATHAWAY.

Suffolk.   February 4, 1958. — February 28, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Gift. Wills, Statute of.*

Warranted findings that a woman living in a rooming house became seriously ill and entered a hospital, and, not knowing whether she would recover, delivered a substantial sum of money to her landlord and advisor and told him to use it for such purposes as she might wish and upon her recovery to return to her any balance then remaining, or, if she should die, to keep any balance remaining at her death, justified a conclusion that she did not make a present gift causa mortis of the money to him; and the attempted gift to him effective upon her death was testamentary and void as in violation of the statute of wills.

CONTRACT.   Writ in the Municipal Court of the City of Boston dated December 17, 1956.

Upon removal to the Superior Court the action was heard by *Nagle, J.*

*Philip M. Cronin,* for the defendant.

*Richard S. Bowers, (Harry K. Wilson* with him,) for the plaintiff.

SPALDING, J.   The plaintiff, who is administrator of the estate of Frances A. Busse, brings this action for money had and received to recover the sum of $2,500 with interest from the date of demand.   A judge, sitting without a jury, found for the plaintiff.   The defendant comes here on exceptions to the denial of two of his requests for rulings.

The judge found the following facts.   On June 25, 1956, the plaintiff's intestate (a spinster), hereinafter called Miss Busse, became seriously ill, and, not knowing whether she would recover, delivered her personal check to the defendant, payable to his order, in the sum of $2,500.   She requested the defendant to cash the check and to use the proceeds for

such purposes as she might wish and upon her recovery to return the balance to her. She told the defendant that if she should die, then he was to keep the proceeds of the check, or any balance thereof remaining in his hands at the time of her death.

The defendant cashed the check on the day he received it and from that time until Miss Busse's death on July 9, 1956, no request was made by her with respect to the expenditure of any part of the proceeds. Thus at her death the defendant had the entire amount of the fund in his possession.

The judge concluded that the defendant held the proceeds of the check during Miss Busse's life, subject to any order she might give him with reference to its proceeds, and that she had never parted with the control of the fund as the general owner. He ruled that on these facts there was no gift causa mortis to the defendant and that the plaintiff was entitled to a finding in the amount of $2,558.08.

The judge denied the following requests presented by the defendant: " (2) Upon all the evidence, plaintiff is not entitled to recover. (3) Upon all the evidence, judgment should be entered for the defendant because the evidence shows that the sum of $2,500 was given defendant as a gift causa mortis." These requests in effect asked the judge to rule that he must find for the defendant as matter of law. Obviously, if a finding for the plaintiff was permissible on any reasonable view of the evidence, including all rational inferences of which it was susceptible, the requests were rightly denied. *Milmore* v. *Landau,* 307 Mass. 589, 590. *Barttro* v. *Watertown Square Theatre, Inc.* 309 Mass. 223, 224. *Hooper* v. *Kennedy,* 320 Mass. 576.

There was no error.

Virtually all of the evidence on the crucial issue in the case came from the defendant, a summary of which is as follows: In 1951 Miss Busse became a lodger in the defendant's rooming house at 69 Mount Vernon Street, Boston, and lived there until 1953, when she came down with tuberculosis and was hospitalized for a year. Upon leaving the hospital she resumed living in the defendant's rooming house. In

June, 1956, Miss Busse became seriously ill and entered a hospital on June 20. Before leaving for the hospital she paid her room rent in advance until September 5, 1956. Both before and after she went to the hospital the defendant assisted her in many ways. She often solicited his advice on financial matters. On June 25, while the defendant was visiting Miss Busse at the hospital, she said to him, "Lloyd, I have been thinking about my money, and I would like you to take care of some of it for me. . . . After my last illness, my expenses were very large and I don't know whether it is because they thought that I had money or not, but I hope this won't be so expensive this time. . . . I would like you to keep some money for me until I come back, if I ever do make it, and you can use it for additional rent from the time that the other took care of, and also if you are going to be able to repair the kitchen, you can use that for the expenses, and I may need some clothing or I may want something down to the hospital. You will have the money, and I will write to you for it." The defendant replied, "Well . . . I am perfectly willing to take care of that for you, Frances." Miss Busse then wrote out a check for $2,500 payable to the defendant and handed it to him. The defendant said, "This is quite a lot of money, Frances," and she replied, "Well, you may need it." The defendant then said, "Well, Frances . . . I will do what you have asked me, but what if you die and do not come back and I have this money?" Miss Busse answered, "Lloyd, if I die, I want you to keep it because you have always been good to me and I want you to have it. It is yours." The defendant then thanked Miss Busse for thinking of him in "this way and so generously" and stated that "Thank you" was "a small word to say for such a gift." During one of the defendant's visits at the hospital Miss Busse told him that she was discouraged about her condition and added, "I doubt very much if I can make it this time, Lloyd."

Subsequently the defendant testified that it was his understanding from his conversation with Miss Busse on June 25 that "if she recovered from her illness, he would return to

her the $2,500 less any part deducted for repairs and if she died, it was his understanding that she was making a gift to him." He further testified that "It was also his understanding [based on inferences drawn from the conversation on June 25] that he was to hold this money simply as an agent for her while she lived."

The defendant cashed the check which Miss Busse had turned over to him, but no part of the proceeds was ever used.

There was other evidence as to what took place when the defendant received the check but it did not differ substantially from the evidence summarized above, and it need not be recited, for even if it can be said to be somewhat more favorable to the defendant it would not change the result.

The judge could very well have concluded on the foregoing evidence that Miss Busse did not make a gift causa mortis of the $2,500 to the defendant. It was said in *Stratton* v. *Athol Savings Bank*, 213 Mass. 46, 48, that a gift causa mortis "'must be completely executed, precisely as required in the case of gifts inter vivos, subject to be divested by the happening of any of the conditions subsequent, that is, upon actual revocation by the donor, or by the donor's surviving the apprehended peril, or outliving the donee, or by the occurrence of a deficiency of assets necessary to pay the debts of the deceased donor. These conditions are the only qualifications that distinguish gifts . . . [causa mortis] and inter vivos. On the other hand, if the gift does not take effect as an executed and complete transfer to the donee of possession and title, either legal or equitable, during the life of the donor, it is a testamentary disposition, good only if made and proved as a will.'" To the same effect are *Duryea* v. *Harvey*, 183 Mass. 429, 433, and *Nelson* v. *Peterson*, 202 Mass. 369, 371. In other words, there must be a transfer of title during the lifetime of the donor; a defeasible title, it is true, but complete until defeated. Tested by these principles it is plain that there was no gift causa mortis here. The findings of the judge, which were warranted on the

evidence, show that Miss Busse intended to retain control of the fund during her lifetime and that the defendant was to hold it as her agent and to use it, if necessary, as she might direct. There was, therefore, no present gift. Such gift as there was was to take effect upon Miss Busse's death. But such a disposition would be testamentary, and, because obnoxious to the statute of wills, utterly void. *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 470–471. *MacLennan* v. *MacLennan*, 316 Mass. 593, 597.

*Exceptions overruled.*