Silva, J.
This is an action of contract in which the plaintiff originally sought to recover from the defendants monies allegedly due him from fees realized from the settlement of two workmen’s compensation cases the plaintiff alleged he referred to the defendants in order to assist him in the handling thereof. The persons whose claims were alleged to have been so referred are Almeida and Davenport. It was claimed that they were the plaintiffs clients at the time of the referrals, were aware of the same, and agreed thereto.
Plaintiff further alleges that both of these cases were settled and fees in the aggregate of $30,400.00 were paid to the defendant Giroux of which the plaintiff claims he was entitled to one-third by agreement of the parties, and says that he has been paid only $6,000.00, and that there is therefore $4,333.00 due and owing to him.
The defendant Giroux’s answer is that the plaintiff and both defendants are attorneys and that he owes the plaintiff nothing or that if he did the plaintiff has been paid in full. He further says that if the agreement was made as alleged by the plaintiff then said agreement was illegal, against public policy and void and that therefore he owes the defendant nothing.
Byway of counterclaim, the defendant, Giroux, alleges that the plaintiff was not entitled to the monies paid him from the fee realized in the Almeida cases, that is the $6,000.00, for the reason that they were paid over to him as a result of his misrepresentation that Almeida was his client when in fact he was not, but rather had intended to engage and did engage the defendant Giroux as sole counsel in these matters.
The defendant Keating’s answer denies that he owes the plaintiff anything although he admits all other allegations in the complaint.
Byway of crossclaim, the defendant, Keating seeks to recover monies in the amount of $4,133.00 from the defendant Giroux for services rendered.
The defendant Giroux in his answer to Keating’s crossclaim denied he owed Keating anything and further byway of defense stated that if he owed Keating anything he has paid in full.
After trial, the Court found that the plaintiff and defendants had entered into a joint venture with respect to these workmen’s compensation cases for purposes of effecting recoveries for the claimants, that each made some contribution in each of the two cases and that there was no discussion held among the three lawyers as to the division of the profits. He then found for the *211 plaintiff in the sum of $4,133.00 and for the cross plaintiff in the sum of $4,133.00 against the defendant Giroux and for the plaintiff on Giroux’s counterclaim.
The court, over defendant Giroux’s objections, further permitted the pleadings of the plaintiff and cross plaintiff to be amended to conform with the facts found, that is, a joint venture, and because this theory had not been advanced or pleaded, it vacated its findings and judgment as entered on August 17,1983 and ordered that the parties file further requests for rulings on this subject.
The court ultimately adopted as its findings in this case the findings of fact originally made by it and incorporated with its order for judgment as originally entered on August 17,1983.
At the trial, there was evidence tending to show the following:
Sometime in September 1979, Goldman, Keating and Giroux met in Brewster, Massachusetts. Keating brought Giroux to Goldman’s office for the purpose of discussing the possibility of taking over Goldman’s law practice. The negotiations continued for a number of months; however, no agreement was reached. At the time of the meeting, neither the Almeida nor the Davenport cases, which are the subject of this litigation, were in Goldman’s office. In the Almeida case, Mrs. Almeida had been trying to work out a settlement with the insurance companies on her own. With regard to the Davenport case, the cause of action had not yet arisen. During the course of the conversation, the Almeida situation was discussed. Mr. Almeida and her son were both killed while working at a trailer park that the Almeida family owned in Brewster. Goldman knew the Almeidas as he previously owned the trailer park and had represented Mr. Almeida in various matters. Goldman represented that Mrs. Almeida was a client. However, at the time of the representation, he was not representing her. Giroux, who had a reputation as a frequent practitioner before the Workmen’s Compensation Board, opined that the Almeida cases appeared to be substantial and should be looked into. At Mr. Giroux’s suggestion, Goldman and Keating agreed that the matters should be looked into.
Goldman heard that Mrs. Almeida was about to settle her claims arising from the deaths of her son and husband. Goldman, based upon Giroux’s opinion, was of the opinion that the settlement amount was inadequate for the Almeida family. Goldman contacted Keating and Giroux and all agreed that the proposed settlement was inadequate and that Goldman should so advise Mrs. Almeida. Goldman then visited Mrs. Almeida at her home, discussed the situation with her, informed her that the settlement was inadequate, and advised her that she should have the cases reviewed by a workmen’s compensation attorney in Boston. He told her that he had little experience in such cases, but that he could recommend counsel with whom she should confer. She agreed. With her permission, Goldman telephoned the office of Giroux and Keating in Boston from Mrs. Almeida’s home and put her on the line with Giroux. A brief discussion took place and an appointment was made between the defendant Giroux and Mrs. Almeida to meet with her at her home in Brewster to discuss these cases.
After the telephone conversation and still in September, Giroux and Keating, who shared office space, drove to Goldman’s office in Brewster, from which all three were driven by Goldman to Mrs. Almeida’s home. Goldman introduced Giroux and Keating to Mrs. Almeida and after exchanging pleasantries, Goldman indicated that he and Keating had other business and left Giroux to discuss the cases with Mrs. Almeida. She then executed the *212 papers necessary for Giroux to represent her in these matters. Giroux subsequently forwarded authorizations and requests for police and hospital records to Mrs. Almeida to be signed by her and returned to him. Upon his receipt of them, he forwarded these requests to the Brewster Police Department and the Cape Cod Hospital and at the same time sent copies of the same to Goldman with a request that he attempt to expedite the obtaining of these reports. Goldman, in turn, wrote to the Brewster Police Department and the Cape Cod Hospital enclosing the copies of the requests for reports and he also sent a copy of his (Goldman’s correspondence) to Mrs. Almeida. Mrs. Almeida, upon receipt of this correspondence, became confused and telephoned the defendant Giroux. She learned that Goldman had written so as to expedite the receipt of the requested reports.
Giroux filed his appearance in these cases and he appeared before the Industrial Accident Board, secured the medical records, negotiated with the insurance carrier and counsel for the carrier, and otherwise managed the cases. Giroux conferred with Keating relative to the cases and the time of brain damage death. Ultimately, Giroux settled the cases for a total of $125,000.00 from which he was paid $24,000.00 of which he retained$12,000.00 and paid $6,000.00 to Goldman and $6,000.00 to Keating. Giroux did not inform Goldman and Keating that the Almeida cases had been settled. Goldman, through independent means, discovered six months later that these matters had been settled and demanded that Keating secure their (Goldman’s and Keating’s) respective portions of the fee.
Prior to the time of Goldman’s unsolicited visit to Almeida, he had never represented her, although he had in the past represented her late husband. He was not asked to represent her in these workmen’s compensation matters. The settlement he had heard about had been arrived at pro se. Keating’s only meeting with Mrs. Almeida took place when driven to her home in the company of Goldman and Giroux.
Neither Goldman nor Keating had filed appearances or appeared before the Industrial Accident Board in these matters, nor did either negotiate with the insurer or its counsel and in Keating’s case, he knew nothing about workmen’s compensation law nor where the Industrial Accident Board was located.
There was testimony from Giroux that the monies he paid to Goldman from the fee realized in the Almeida cases were paid to Goldman by Giroux on the belief that Mrs. Almeida was in fact Goldman’s client and that he (Goldman) referred the case to him with Mrs. Almeida’s permission and knowledge, when in fact she had not so engaged Goldman.
With reference to the Davenport matter, Mrs. Davenport and her husband had been clients of Goldman for approximately 14 years prior to the Fall of 1979. In October of 1979, she consulted Goldman about her husband who was then ill and the possibility of a workmen’s compensation claim on his behalf. Goldman advised her that because of his ill health he could not handle the case and referred her to Giroux, whom she telephoned at his summer home in Dennis and engaged as counsel.
Giroux took this case and only he filed an appearance, conferred several times with Mrs. Davenport, appeared with her at the Industrial Accident Board sitting at Barnstable on several occasions, negotiated with the insurer and its counsel and otherwise assumed full responsibility for this case until it was settled byway of a lump sum from which the defendant Giroux was paid $6,400.00, of which he paid Goldman nothing because he (Giroux) felt that since Mrs. Almeida had not hired Goldman as her counsel in her cases, as represented by Goldman, there was not a proper referral, Goldman was not *213 entitled to the $6,000.00 previously paid and if anything owed Giroux money. Giroux paid Keating nothing because Keating in no way participated in the prosecution of the Davenport case.
Early in the Davenport matter, Mrs. Davenport was concerned as to the fee she would have to pay and consulted Goldman on the subject. Goldman requested that Giroux assure Mrs. Davenport on this question and in turn Giroux advised her that there would be but one fee, that is, to Giroux, and that anything paid to Goldman would come from Giroux.
Neither Goldman nor Keating filed an appearance in this case, nor did they appear at the Industrial Accident Board or carry on any negotiations relative to the disposition thereof. Goldman or his office sent correspondence to Giroux and Keating which contained a newspaper clipping which had some bearing on the Davenport case.
During the course of Mr. Davenport’s illness, which resulted in the workmen’s compensation claim, Mrs. Davenport had conferred with Mr. Goldman or had spoken to him on the telephone relative to her husband’s illness and what rights, if any, she might have in the event of her husband’s death. Keating testified that he and Giroux drove to Mrs. Davenport’s home in Brewster in an effort to speak to her. However, on that occasion she was not at home. Giroux and Keating went to the Cape Cod Hospital to visit Mr. Davenport, but found that he had been transferred temporarily to another hospital.
The difficulty with the Davenport case was whether the malady from which Mr. Davenport suffered was work-related. Mr. Davenport worked for an extermination company and came in frequent contact with pigeon droppings. The relationship between the pigeon droppings and the malady from which Mr. Davenport was suffering was critical. The newspaper clipping was an article which dealt with the relationship between pigeon droppings and the disease that Mr. Davenport was suffering from.
The two cases, Almeida and Davenport, were acquired during the time period in which Goldman, Keating and Giroux were negotiating the acquisition of Goldman’s law practice.
Trial commenced March 28,1983 and on August 19,1983, the Court made the following special findings:
I find that the plaintiff, Maurice M. Goldman, and the two defendants, Eugene X. Giroux and Kevin M. Keating, all lawyers, entered into a joint venture as to two workmen’s compensation cases in one of which cases a Mrs. Almeida was the claimant and in the other, Mrs. Davenport was the claimant. The joint venture was an association of the three for the purpose of affecting recoveries in the two cases against the insurance companies and in which they each contributed their own special skills, knowledge and labor.
I find that there was no writing nor any discussion held among the three lawyers as to the division of the profits. I find that each of the three made some contribution in each of the two cases.
I find that the association or joint venture was to terminate upon the settlement of the cases and it did terminate except as to the division of the profits.
I find that the total profit of the joint venture to have been $30,400 of which $24,000 was the fee in the Almeida case and $6,400 was the fee in the Davenport case. Giroux received the total amount from the insurer in each of the two cases. Approximately five (5) months after the receipt of the fee in the Almeida case and after a number of inquiries had been made by Goldman and Keating, Giroux acknowledged that the case had been settled and sent $6,400 *214 to each.
Giroux paid no more to Goldman and Keating and in fact his answer contains a counterclaim against Goldman alleging that the $6,400 paid was paid by him because of fraudulent representations made by Goldman and because of mistake.
I find that there is due and owing to Goldman from Giroux the sum of $4,133 plus interest from December 31,1980 on $2,000, and interest from September 30, 1981 on $2,133.00.
I find that Keating owes Goldman nothing.
I find that there is due and owing to Keating from Giroux the sum of $4,133 plus interest from December 31,1980 on $2,000, and interest from September 30, 1981 on $2,133.00.
I find for the plaintiff on defendant Giroux’s counterclaim (Counts one and two).
Before making these findings, I found preliminarily that the joint venture was terminated except as to the division of the profits. See Philip Whitehead Co. v. Edward Krock Industries, Inc., 26 Mass. App. Dec. 206, 210 (1963).
The pleadings may be amended so as to be in conformity with the facts found.
I deem Goldman’s requests for Rulings waived in view of my findings.
Goldman and Keating duly filed motions to amend their pleadings to reflect a finding of the existence of a joint venture. Giroux timely filed a motion to alter and amend judgment and new trial. The Goldman and Keating motions were allowed and the following order was made on the Giroux motion.
In view of the fact that the Court made a finding that there was a joint venture in this case and this theory had not been advanced or pleaded so that the parties had an opportunity to file requests for rulings of law as to this theory, I vacate my findings and judgment entered August 17, 1983 and order that the parties file further requests for rulings on this subject by October 28,1983.
I hereby adopt as the findings in this case, the findings of fact made by me and incorporated with the order for judgment entered August 17, 1983.
In accordance with that order Giroux filed several requests for rulings. Only those rulings which the defendant claims were erroneous are reported.
4. Whether there is a referralof a client or a joint venture, the plaintiff and cross plaintiff must prove:
a) Almeida and Davenport were in fact their client as alleged,
b) As such they were advised of the alleged joint venture and approve of the same together with the division of any fees to be realized.
c) The plaintiff and cross plaintiff in fact referred these matters to the defendant, Giroux to assist them in a joint venture with an agreement to a specific division of the fees as alleged.
d) The plaintiff and cross plaintiff in fact assisted the defendant, Giroux, and participated in the management of these claims.
Denied, the request is in the alternative.
This request was framed in such a manner that the trial judge was required to instruct himself on the law of joint ventures and the effect of S.J.C. D.R. 2-107 on the facts found. This request was properly denied. In order to pose a request requiring a judicial answer it must relate to a fact or a factual aspect of the case that is dispositive or decisive of an issue in the case. Stella v. Curtis, 348 Mass. 458, 462.
7. Representations by the plaintiff and cross plaintiff to the defendant, *215 Giroux, that Almeida and Davenport were their clients, that they had employed them to represent them in their claims, that they controlled their cases and could join the defendant with them as joint venturers, go to the very essence of the contract they allege and if not proven, or if false, then the plaintiff and cross plaintiff are not entitled to recover from the said defendant, and this is so although such representations were made in good faith.
Denied, I rule that it was unnecessary for plaintiff and cross plaintiff to make the representations presented in the request for a joint venture to be created.
8. If Almeida and/or Davenport did not in fact employ the plaintiff and/ or cross plaintiff to represent them in their respective claims, then the plaintiff and/or cross plaintiffs representation that he had been so employed were false and he is guilty of fraud in the legal sense, even though he honestly believed he had been so employed, and is not entitled to recovery.
Denied, I do not find that the plaintiff or cross plaintiff represented to defendant that either or both had been employed to represent Almeida or Davenport in their respective claims under the Workmen’s Compensation Act.
With regard to the Almeida case, there would have been no claim for Giroux to pursue but for the intervention of Goldman in advising Almeida of the inadequacy of her pro se settlement. Giroux and Keating were introduced to Almeida by Goldman. During the course of the case Goldman was contacted by Giroux to expedite medical and police records. Keating was also consulted by Giroux with regard to an aspect of the case. The fact that these claims were acquired during the period when Keating and Giroux were negotiating for the acquisition of Goldman’s law practice would be some evidence that the parties had or were contemplating some type of business relationship which would ultimately result in Keating and Giroux becoming successors to all of Goldman’s pending cases.
As between the parties the relationship of joint venture is a matter of intent and arises only when they intend to associate themselves as such. Cardullo v. Landan, 329 Mass. 5, 8.
Whether or not Almeida consented to his arrangement would not in anyway affect the status of a joint venture as between the parties. We find no error in the denial of requests 7 and 8.
9. If the plaintiff and/or cross plaintiff had not been employed by Almeida and/or Davenport, as alleged then a division of the fees realized from their respective claims would be contrary to the law, public policy and S. J.C. Rules DR 2-107.
Denied. See special findings.
Likewise, we find no error as the request was framed on facts not found. With regard to the Davenport claim, Goldman had represented them for fourteen years. He referred the case to Giroux and when he was questioned by Davenport on the fee arrangement, she was advised by Giroux that there would be one fee and Goldman would be paid by him. This appears to be in conformity with S.J.C. DR 2-107.
DR 2-107. Division of Fees Among Lawyers.
(A) A lawyer shall not divide afee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.
(2) Reserved for future use.
(3) The total fee of the lawyers does not exceed reasonable compensation for all legal services they rendered the client.
*216 (B) This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement.
Giroux’s position seems to be that there is no question about Goldman being entitled to a fee in the Davenport case, but not in Almeida. He did not pay Goldman because he felt that Goldman was not entitled to the Almeida fee and therefore was overpaid by virtue of the proceeds received from the Davenport case.
10. If the parties acted honestly and in good faith, by reason of the mutually mistaken belief that the plaintiff and/or cross plaintiff represented and could bind Almeida and Davenport as their counsel with power to create a joint venture with the defendant, Giroux, there was never a meeting of the minds; a mutual mistake existed, and therefore, there was no contract between the plaintiff and/or cross plaintiff and the said defendant, Giroux, and the plaintiff and/or cross plaintiff cannot recover.
Denied. See special findings.
11. If no contract existed between the plaintiff and/or cross plaintiff and the defendant, Giroux, the plaintiff and/or cross plaintiff are not entitled to specific performance, and if the plaintiff was voluntarily paid a sum of money by said defendant, Giroux, on the mistaken belief, induced by the plaintiff’s fraud, that a contract existed, plaintiff and/or cross plaintiff should not be allowed to retain such sum and it should be returned to said defendant in accordance with his counterclaim.
Denied. See special findings.
Requests 9,10 and 11 were properly denied. Denial of a proper request for ruling is correct where (a) the trial judge’s special findings of facts renders inapplicable the rule of law on which the request is based; or (b) the request is based upon the assumption of the existence of facts which are contrary to those found by the judge. Nelson v. Judd, 49 Mass. App. Dec. 14.
12. A payment made to plaintiff and/or cross plaintiff by the defendant, Giroux, in violation of public policy is recoverable by the defendant.
Allowed, however I find that the payments made by Giroux were not in violation of public policy.
13. Mere proof of an oral agreement between the plaintiff and/or cross plaintiff and defendant, Giroux, to share in a fee or fees from matters allegedly referred to said defendant by the plaintiff and/or cross plaintiff without more, when the plaintiff and/or cross plaintiff alleges the persons were their clients and that they were also to assist the defendant is not.
Denied, as the predicate of the request for ruling is not in accordance with the facts found.
14. When a plaintiff alleges ajoint venture with a defendant in which he was to contribute or assist him as ajoint venturer in the handling of their claims such an allegation implies control in and participation of the plaintiff in the prosecution of these claims and he must prove the extent of his assistance and participation to support recovery.
Allowed, insofar as control and participation are among the criteria considered as determinative of the existence vel non of ajoint venture.
There was no error. A party cannot be said to be aggrieved by the allowance of a request, unless there appears to be an inconsistency, in which case a motion to correct the inconsistency should have been filed with the trial judge. Feldman v. Davey Development Co. Inc., 340 Mass. 784.
15. The mere referral of cases by the plaintiff and/or cross plaintiff to the defendant, Giroux, without more does not warrant plaintiff and/or cross *217 plaintiff participation in the fees from such cases and to require such participation would violate S.J.C. Rule DR 2-107 and public policy against payment of finder’s fees between counsel and does not support recovery by the plaintiff and/or cross plaintiff.
Denied, as I do not find that plaintiff and cross defendant merely referred cases to the defendant, Giroux.
16. The plaintiff and/or cross plaintiff must prove that Almeida and Davenport were in fact their clients, that as such they consented to a joint venture with the defendant, Giroux, and that a full disclosure that a division of the fees was to be made in order to comply with S.J.C. Rules DR 2-107.
Denied, I do not specifically find that Almeida and Davenport were clients of the plaintiff or cross plaintiff but were clients of the joint venture. I further find that Almeida and Davenport were informed that there would be one fee payable to the joint venture, but as to how the fee was to be divided was not the concern of Almeida and Davenport.
18. The evidence requires a finding that the plaintiff and cross plaintiff have failed to prove the existence of a joint venture with the defendant, Giroux.
Denied. See special findings.
19. The evidence requires a finding that the plaintiff and cross plaintiff have not proven the requisite intent to form a joint venture.
Denied. See special findings.
20. The evidence requires a finding that neither the plaintiff nor the cross plaintiff have proven the essential element of a joint venture, namely, mutual control and management of the alleged joint enterprise.
Denied. See special findings.
21. The evidence requires a finding that the plaintiff and/or cross plaintiff has not proved that Almeida and/or Davenport were in fact their clients.
Denied, I do not find it necessary for plaintiff or cross plaintiff to prove that Almeida and Davenport were their clients prior to the existence of the joint venture.
22. The evidence requires a finding that Almeida and/or Davenport were not clients of the plaintiff and/or cross plaintiff but of the defendant, Giroux, and the plaintiff and/or cross plaintiff, therefore, are not entitled to participate in the fee from their cases.
Denied as not in accordance with the facts found.
23. The evidence requires a finding that any payments made by the defendant, Giroux, to the plaintiff and/or cross plaintiff were made by mistake and upon a belief, induced by representation of the plaintiff that Almeida was his client, which representations were in fact false, and therefore, the plaintiff and/or cross plaintiff were not entitled to such payments.
Denied, I do not find that Giroux made any mistake as to the payment to the plaintiff and cross plaintiff except as to the amount paid and that he clearly understood the relationship between the parties and the clients before any work was undertaken.
24. The evidence requires a finding of fact that any payments made by the defendant, Giroux, to the plaintiff and/or cross plaintiff from the Almeida cases, was made upon the belief, induced by representation of the plaintiff that Almeida was his client which representations were in fact false, and, therefore, such payment was against public policy and the law and should be returned to the defendant.
Denied. See number 23.
25. The plaintiff and/or cross plaintiff failed to sustain his burden to prove that Almeida and/or Davenport were in fact his clients whom he advised and *218 who approved of the alleged joint venture or referral of their cases to the defendant, Giroux, with an agreement to the division of fees.
Denied. See special findings.
There was no error. A request for ruling based upon the existence of assumed facts is properly denied when the trial judge finds that such facts did not exist. Industrial National Bank of R.I. v. Leo’s Used Car Exchange Inc., 46 Mass. App. Dec. 63; LeBlanc v. Edelstein, 41 Mass. App. Dec. 27. Likewise, a request for ruling is properly denied when based upon facts not found by the trial judge. Doherty v. Servend, Inc., 41 Mass. App. Dec. 186.
26. The evidence requires a finding that there was no agreement between the parties as to a specific division of the fees from the Almeida and/or Davenport cases and if the plaintiff and/or cross plaintiff is to recover anything, it should be on the basis of quantum meruit.
Denied. See special findings.
27. The evidence requires a finding that the plaintiff and/or cross plaintiff did not so perform his alleged agreement with the defendant, Giroux, to assist him in the handling of the Almeida and/or Davenport cases as to warrant a recovery by the plaintiff and/or cross plaintiff.
Denied. See special findings.
28. The evidence requires a finding that any amount due the plaintiff and/or cross plaintiff on account of his assistance to the defendant, Giroux, in the Davenport case, should be deducted from the sum owed by the plaintiff and/or cross plaintiff to the defendant, Giroux, on account of monies which the said defendant was induced to pay the plaintiff and/or cross plaintiff as a result of the plaintiff’s misrepresentations that Almeida was his client.
Denied. See special findings. •
29. The evidence requires a finding that if any amounts were due and owing to the plaintiff and/or cross plaintiff from the defendant, Giroux, of the fees realized from the Almeida and Davenport cases, the plaintiff and cross plaintiff have been paid in full.
Denied. See special findings.
30. The evidence requires a finding that neither the plaintiff nor the cross plaintiff have proven the nature, extent or value of any services allegedly performed by them.
Denied, I do not find that it is necessary for plaintiff or cross plaintiff to prove the nature, extent or value of their services in order to recover under a joint venture theory.
31. The evidence requires a finding that the plaintiff did no more than recommend the defendant, Giroux, to the clients, Almeida and Davenport, and without more is not entitled to participate in the fees from said case.
Denied. See special findings.
A request for ruling that a finding in favor of the defendant was required must be distinguished from a request that a finding was warranted. The request that a finding is required cannot be granted unless evidence by which the defendant was bound required such a finding. Memishian v. Phipps, 311 Mass. 521, 525.
A request that a trial judge must find for the requester is properly denied when a finding for the adverse party is permissible on any reasonable view of the entire evidence, including all rational inferences of which the evidence is susceptible. All of these requests “in effect asked the judge to rule that he must find for the defendant as a matter of law. Obviously, if a finding for the plaintiff *219 was permissible on any reasonable view of the evidence, including all rational inferences of which it was susceptible, the request was rightly denied.” Bowers v. Hathaway, 337 Mass. 88, 89; Greenleaf v. Albanese, 41 Mass. App. Dec., 107.
The report is dismissed.

So ordered.